IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-CR-08-CJW |
| | ) | |
| vs. | ) | |
| | ) | |
| JASON DEAN ANDERSON, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESISTANCE TO DEFENDANT'S MOTION
FOR DOWNWARD VARIANCE**

On November 22, 2023, defendant filed a motion for downward variance.

(Docket 39).  As grounds for a downward variance, defendant asserts that applying

a two-level enhancement for use of a computer is illogical, and also cites purported

mitigating factors relating to his history and characteristics and the nature and

circumstances of the offense.  (Docket 39 at 2-6).  For the reasons stated below,

under the facts and circumstances of this case, a downward variance is not

warranted under the 18 U.S.C. § 3553(a) factors.  Due to the aggravating

circumstances in this case, including defendant's repetitive behavior and his direct

solicitation of victims online, a sentence at the top of the range is sufficient, but not

greater than necessary, to achieve the goals of sentencing.

When determining a sentence that is "sufficient, but not greater than

necessary," the Court is required to consider:

(1) the nature and circumstances of the offense and the history and
characteristics of the defendant;

(2) the need for the sentence imposed---

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to protect the public from future crimes of the defendant; and

    (C) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [under the United States Sentencing Guidelines];

(5) any pertinent policy statement [by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The factors identified by defendant do not, alone or in combination, demonstrate that a downward variance is necessary to achieve a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.

## I.    Relevant Facts

Between at least July 14, 2021, and August 26, 2021, defendant participated in a Snapchat group called "Daddys Princess." (PSR 7). The chat contained hundreds of messages which were sexually explicit in nature. (PSR 7). Among those were visible depictions of a minor victim aged thirteen displaying her vagina and anus. (PSR 7). Another adult male user in the chat group was interviewed in connection with the investigation in Ohio and stated that the minor in the group

would live stream sexual activity to himself and the other members of the group. (PSR 7). Defendant also requested that the female take and post the sexually explicit depictions of herself. (PSR 7).

On August 26, 2022, defendant was interviewed at his home. (PSR 8). During the interview defendant permitted officers to view his iPhone. (PSR 8). Officers seized the cell phone and searched it, finding approximately 37 videos and 20 photos of minors engaged in sexually explicit conduct or engaged in the lascivious display of genitals or anus. (PSR 9). These videos were dated ranging from approximately July 7, 2015, through March 15, 2022. (PSR 9). These depictions were obtained through the cloud based instant messaging service Telegram. (PSR 9). Some of the depictions on defendant's phone depicted adults sexually abusing infants. (PSR 9).

Defendant was again interviewed by law enforcement on February 8, 2023. (PSR 10). During that interview defendant stated he had met a minor online who was 13 or 14 years old. (PSR 10). He stated that he spoke to her on Snapchat and that he used Telegram for pretty much the same thing. (PSR 10). Defendant stated he was interested in teenagers and had looked at them for years. (PSR 10). Defendant admitted he had chatted with "a few here and there" and had received depictions as young as nine years old. (PSR 10). He stated he had received videos from Telegram involving oral sex and vaginal sex but that he would try not to save them to his device. (PSR 10).

3

Defendant's repeated actions in 2022 and 2023 were not his first foray into child pornography. In 2011, a behavioral specialist at a facility for individuals with intellectual disabilities in South Dakota contacted law enforcement. (PSR 26). The behavioral specialist reported that a minor at the facility had used a facility cell phone to text an adult male and send him nude photos of herself. (PSR 26). The seventeen-year-old suffered from a neurodevelopmental disorder. (PSR 26).

The minor's phone was examined, and sexually explicit conversations were found, as well as images of the minor's vagina and breasts sent to a phone number ending 0407. (PSR 27). The messages from 0407 requested sexually explicit depictions of the minor including but not limited to:

- What do you have on tonight
- Send me a pic
- I'm so hard
- I want to eat your pussy
- One more sexy pic

(PSR 27).

The number ending in 0407 was registered to defendant's wife. (PSR 28). The minor was interviewed and stated she had met the man using the number ending 0407 named "Jake" two years prior when she was fifteen and had been communicating with him for a couple of years. (PSR 28). The minor's mother was also interviewed, and she stated that she had spoken to "Jake" and told him to stop contacting the minor, however he did not stop. (PSR 28).

4

A search warrant was executed at defendant's residence on January 28, 2012. (PSR 29). Defendant was interviewed and admitted he had sent photos to the minor and that they had communicated for two years, at least some of which had been sexual. (PSR 29). He admitted that he had requested photos of the minor's vagina and breasts, and also admitted to speaking to the minor's mother. He stated he had a sexual preference for teenagers and had also sent photos of his penis to other minors as well. (PSR 29). Defendant was not charged with any criminal offenses related to this conduct. (PSR 30).

## II.  Argument

The nature and circumstances of the offense and defendant's history and characteristics weigh strongly in favor of a within-guidelines sentence. First, defendant seeks a downward variance based on his policy disagreement with the enhancement for the use of a computer under USSG §2G2.2(b)(6). (Docket 39 at 2-3). Defendant argues that, "[i]n this day and age, it is difficult to imagine a child pornography case that does not involve a computer." (Docket 39 at 3). Defendant's argument fails to acknowledge that the Sentencing Commission took these concerns into account in 2004, when it set a base offense level for distribution and receipt offenses in USSG §2G2.2 below the applicable mandatory minimums in order to account for the frequent application of certain specific offense characteristics:

> The Commission determined that a base offense level of level 22 is appropriate for trafficking offenses because, when combined with several specific offense characteristics which are expected to apply in almost every case (e.g., use of a computer, material involving children under 12 years of age, number of images), the mandatory minimum of 60 months' imprisonment will be reached or exceeded in almost every case by the Chapter Two calculations.

5

USSG Manual, Commentary to Amendment 664, App. C, Vol. III, at 58-59.

While defendant's offense of conviction does not actually carry a mandatory minimum sentence, defendant's conduct is in line with crimes that do. Defendant solicited a minor to produce, and post online to multiple people, sexually explicit videos and photographs. (PSR 7). This conduct is in line with violations of 18 U.S.C. §§ 2251(a) and 2252(a)(2), both of which carry mandatory minimum sentences. Because the Sentencing Commission was aware that the specific offense characteristics in §2G2.2 were "expected to apply in almost every case" and deliberately lowered the base offense levels in §2G2.2 to account for that fact, it is not illogical to apply the guidelines as written. This court should not adopt defendant's policy disagreement with the guideline.

Defendant also contends that a long sentence "will not deter any criminal behavior" because "[t]here simply isn't anything to deter." (Docket 39 at 6). This assertion has no support in the record. The nature and circumstances of defendant's offense are aggravating and demonstrate his high risk of recidivism. For a period of more than a decade, defendant repeatedly preyed on his victims using the anonymity of the internet. He was told by the mother of his victim in 2011 to stop contacting her daughter, but he persisted. He was encountered by law enforcement in 2012 about that same victim. Defendant was not charged with a crime from that incident, but the fact of that encounter and his subsequent return to predatory online behavior demonstrates his risk of recidivism. In 2022 he was again encountered by law enforcement and had his cellular phone containing child

6

pornography confiscated.  He again returned to seeking out minors online and obtaining child pornography.  While defendant notes that he was cooperative with law enforcement each time he was encountered, the most important fact of these encounters is that they kept occurring.  Defendant has demonstrated that he is at a high likelihood to reoffend, and a significant sentence is warranted.  While defendant is indeed a Criminal History Category I, he is atypical as he has repeatedly returned the same serious criminal conduct after having law enforcement contacts.

Defendant also notes his history of employment and his strong family support.  (Docket 39 at 5).  While these are positive factors for defendant, they do not mitigate his crime or the lasting impact it will have on his young victims.  His family ties and employment history did not stop him from committing this crime, and should not mitigate the punishment here.

In support of his argument for a 96-month sentence, defendant cites the JSIN data listed in the presentence report.  That data, while potentially helpful in some circumstances, should carry little weight here.  The data cited is a crude metric and fails to account for someone like defendant, who has repeatedly returned to predatory online behavior despite multiple warnings.  He is plainly not an "average" defendant and does not warrant an average sentence.  In light of his serious, repetitive conduct in this case, a top-of-guidelines sentence of 168 months is sufficient, but not greater than necessary, to achieve the goals of sentencing in 18 U.S.C. § 3553(a).

CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2023,
I electronically filed the foregoing with the
Clerk of Court using the ECF system, which
will send notification of such filing to the
parties or attorneys of record.

UNITED STATES ATTORNEY

BY: */s/ RAL*_____

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney


By: */s/ Dan Chatham*

DAN CHATHAM
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, Iowa 52401-2101
(319) 363-6333
(319) 363-1990 - Fax
Dan.Chatham@usdoj.gov

8